JOSEPH HAUBER v. WILLIAM LEIBOLD.

FILED MAY 17, 1906. No. 14,352.

1. **Instructions.** A party is entitled to have the jury instructed with reference to his theory of the case, when such theory is presented and supported by competent evidence.

2. **Contracts: COMPETENCY.** In order to make a valid contract the minds of the parties must meet; and if one mind is so weak, unsound or diseased that the party is incapable of understanding the nature and quality of the act to be performed, or its conse-quences, he is incompetent to make a valid contract, whether such state of his mind be the result of sickness, accident or vol-untary intoxication. *Johnson v. Harmon*, 94 U. S. 371.

ERROR to the district court for Otoe county: PAUL JESSEN, JUDGE. *Reversed.*

*W. F. Moran* and *A. P. Moran,* for plaintiff in error.

*John C. Watson* and *L. F. Jackson, contra.*

ALBERT, C.

This action was brought to recover damages for breach of an alleged contract not to engage in business as a baker or confectioner in Nebraska City.   The petition upon which the cause was tried alleges, in substance, that the plaintiff and defendant for a number of years had been associated together as partners under the firm name of Hauber & Leibold, and engaged in the bakery and confectionery business in that city, owning the stock in trade, fixtures and certain real estate; that on or about the 5th day of October, 1901, they entered into a contract in writing, whereby the defendant, for and in consideration of the sum of $5,000 to be paid to him by the plaintiff, agreed to sell and convey his entire undivided interest in the firm and firm property, including the good-will belonging to the said business, to the plaintiff, and as a further consideration for the $5,000 undertook and agreed that he would not, at any time, either as owner or employee, "set up, exercise or carry on the said trade or business of baker or confectioner within the said city of Nebraska City, or engage in opposition to the trade or business hereafter to be carried on by William Leibold, nor do anything to the prejudice thereof, so long as the said William Leibold is engaged in the bakery business for himself," and that for any violation of the stipulation against engaging in said business the defendant by the terms of said contract undertook to pay the sum of $2,000 as liquidated damages. The petition also charges certain acts on the part of the defendant constituting a breach of said stipulation and consequent damage to the plaintiff.

The trial court in its charge to the jury, after stating the material allegations of the petition, instructed the jury with reference to the subsequent pleadings, giving the

substance thereof, as follows: "Instruction No. 1. Paragraph 2., "To this petition the defendant answers, in substance, by first denying each and every allegation contained in said petition. Defendant, further answering, says that the pretended agreement set out in plaintiff's petition was not the real dissolution agreement between him and the plaintiff, but that the contract set out in plaintiff's petition was made and executed several days after the real dissolution took place, and the $5,000 mentioned in said agreement was the agreed consideration for the actual property transferred by the defendant to the plaintiff, and no part thereof was received by this defendant in consideration of his not engaging in the bakery business, nor did he in the original dissolution agreement ever agree or promise not to reengage in said bakery business.,

Defendant, further answering, says that, in order to cheat, wrong and defraud this defendant, the plaintiff wrongfully destroyed or secreted the original agreement of dissolution, and several days thereafter, and while this defendant was so intoxicated as not to be able to comprehend the nature of the business he was transacting, and through and by force of reason, threats and duress practiced upon this defendant, this defendant was forced to and did sign the alleged agreement set out in plaintiff's petition, and that there was no consideration whatever received by this defendant or paid by the plaintiff for the contract or agreement set out in plaintiff's petition. Defendant, further answering, says that the plaintiff's business has not in any manner been injured by reason of his engaging in the bakery business, and that the plaintiff has not been in any manner damaged thereby, and defendant prays that he may be dismissed from this action and recover his costs herein expended.

"Paragraph 3., To this answer the plaintiff has filed a general denial for reply."

Evidence was adduced on the part of the defendant tending to establish both affirmative defenses, namely: (1) That the contract in suit was made after the parties had

entered into a contract in writing in substantially the same terms, save that the original contract contained no stipulation against the defendant engaging in said business, and that there was no consideration for the second contract containing such provision; and (2) that at the time the contract in suit was made the defendant, owing to intoxication, lacked capacity to make a binding contract.

The following taken from the charge to the jury shows the theory upon which the trial court submitted the case:

"Instruction No. 3. The burden of proof is on the plaintiff in this case, and before he can recover he must prove by a preponderance of the evidence the following propositions: (1) That the alleged contract set up in his petition was signed at or about the time therein mentioned. (2) That a part of the $5,000 given by plaintiff to the defendant was in consideration of defendant not again engaging in the bakery business in Nebraska City while the plaintiff was engaged in that business. (3) That defendant has engaged in the bakery business again in competition with plaintiff. (4) That plaintiff has been damaged in his business by reason of defendant engaging in the bakery business. (5) The amount of damages that plaintiff has sustained, if any.

"Instruction No. 4. If you believe the plaintiff has established each and all of the issues mentioned in the preceding instruction by a preponderance of the evidence, then before the defendant can avoid a judgment against him he must show by a preponderance of the evidence that said contract was signed by the defendant at a time when he was so intoxicated that he did not have sufficient mental ability to understand the nature of the contract he was entering into."

The defendant tendered, but the court refused to give, the following instruction: "You are instructed that one of the issues in this case is the consideration of the contract sued on in this case. You are instructed in this connection that if you find from the evidence that $5,000 was the purchase price of defendant's interest in the partnership

property, and that such sale was actual, agreed on and reduced to writing, and that said contract contained no inhibition against the defendant engaging in business in Nebraska City, Nebraska, and that there was no further consideration for the contract sued on in this case, and in case you so find from the evidence, you will return a verdict for the defendant." There was a verdict for the plaintiff and judgment went accordingly. The defendant brings error.

It is now contended that the court erred in refusing to give the instruction hereinbefore set out tendered by the defendant. We are of the opinion that this contention is well founded. The instruction tendered covers one theory of the defense, namely, that the contract in suit was made after the parties had already bound themselves by a valid contract in writing, and in substantially the same terms, save the stipulation against engaging in the same business in Nebraska City, and without any new or additional consideration for such stipulation. If this theory be established, and as before stated there is evidence tending to support it, the stipulation is without consideration and the defendant is not bound by it. It is well settled that a party to an action is entitled to have the jury instructed with reference to his theory of the case, when such theory is presented and supported by competent evidence. *Boice v. Palmer*, 55 Neb. 389, and authorities cited. It is the duty of the trial court to instruct the jury as to the issues. *Sanford v. Craig*, 52 Neb. 483; *Kyd v. Cook*, 56 Neb. 71, 71 Am. St. Rep. 661, and cases cited. The instructions hereinbefore set out are the only ones whereby the court undertook to state the issues and cover the theories of the respective parties, and it does not seem that they cover the defendant's theory of a want of consideration for the stipulation in question. We do not overlook the second paragraph of instruction No. 3, requiring the plaintiff to show by a preponderance of the evidence "that a part of the $5,000 given by plaintiff to defendant was in consideration of defendant not again engaging in the bakery business,"

but that, in our opinion, does not cover the ground. In the first place, it is not clear whether it refers to the contract in suit, or to what the defendant claims was the original and only valid contract between himself and the plaintiff. But in either case, the language could easily be construed by the jury as a license to interpret the contract, to place their own construction upon it, or to look beyond the writing and determine from facts and circumstances *aliunde* whether the defendant was bound to refrain from engaging in business in competition with the plaintiff. But, however this language of the court may have been construed by the jury, or for whatever purpose it was used by the court, it cannot be said to be a clear presentation of the defendant's theory of a want of consideration, and the instruction tendered covering that theory should have been given.

Complaint is made that the instruction as to the degree of drunkenness the defendant was required to prove to establish the defense of intoxication is too favorable to the plaintiff. We are inclined to think there is some ground for this complaint. The word "idiotic" used in this instruction is very elastic. According to Webster an idiot is a natural fool, or fool from his birth; a human being in form, but destitute of reason or the ordinary intellectual powers of man; a foolish person; one unwise. Bouvier says that idiocy is that condition of mind in which the reflective, or all, or a part, of the affected powers are either wanting or are manifested to the least possible extent. In *Owings' Case,* 1 Bland (Md.), 370, 17 Am. Dec. 311, it is defined as that condition in which a human creature has never had from birth any, or the least glimmering of reason, and is utterly destitute of all intellectual faculties in which man in general is so eminently and peculiarly distinguished. In *Clark v. Robinson,* 88 Ill. 498, the court, citing 1 Blackstone, Commentaries (Chitty's ed), *302, *304, said: "An idiot, or natural fool, is one that hath had no understanding from his nativity; and therefore is by law presumed never likely to obtain any. * * * A man

is not an idiot if he have any glimmering of reason, so that he can tell his parents, his age, or the like common matters." In *Bicknell v. Spear*, 77 N. Y. Supp. 920, the court defined an idiot as one having no power of mind whatever. Taking into account the connection in which the word idiotic is used in the instruction, and the various definitions thereof by eminent authorities, there is danger that the jury construed the instruction as imposing a greater burden upon the defendant than is warranted.

The courts are not quite in accord as to the degree of drunkenness that will incapacitate a person to bind himself by contract. The authorities are reviewed at some length in *Wright v. Walker*, 127 Ala. 557, 54 L. R. A. 440, the latter being copiously annotated. Of the numerous cases there cited *Johnson v. Harmon*, 94 U. S. 371, 24 L. ed. 271, states the rule which best commends itself to our judgment. It is as follows:

"Both minds must meet in such a transaction; and if one is so weak, unsound, and diseased that the party is incapable of understanding the nature and quality of the act to be performed, or its consequences, he is incompetent to assent to the terms and conditions of the instrument, whether that state of his mind was produced by mental or physical disease, and whether it resulted from ordinary sickness, or from accident, or from debauchery, or from habitual and protracted intemperance."

Measured by the foregoing rule the instruction in question is too favorable to the party seeking to enforce the contract. Whether the defendant is in a position to avail himself of the defense of intoxication as an independent defense is not raised, and for that reason is not considered.

For the reasons hereinbefore pointed out, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

DUFFIE and JACKSON, CC., concur.

By the Court:   For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED.