In the Matter of the Estate of HENRY CLIFFORD DOWNS, Deceased.

Surrogate's Court, Richmond County, November 22, 1935.

*Daniel G. Brennan*, for the mother, the petitioner.

*Joseph P. Walsh*, for the father, the administrator.

SMITH, S. The mother of the decedent petitioned this court to compel the father, as administrator, to account and pay over her distributive share of the proceeds of the recovery in a negligence action for the death of their child. The administrator denied the

right of the mother to any part of such recovery, claiming that she had abandoned her child.

Section 133 of the Decedent Estate Law provides that the damages recovered in an action for negligence are, in the absence of a husband, wife or children, exclusively for the benefit of the father and mother of a child, but that in the event of abandonment of the child by either the recovery shall be for the sole benefit of the other.

In the present instance the decedent at the time of his death was a boy nearly seventeen years of age. He was unmarried, and his father and mother are the only persons under the statute entitled to share in the recovery. The undisputed facts in relation to the matter are as follows, viz.:

The parties to the proceeding intermarried on October 12, 1913. The decedent, their only child, was born on December 31, 1915. The parents separated in April, 1920, and the child resided with his father's mother, pursuant to a written agreement between the parents, from August 30, 1920, until May, 1921, and by authority of a decree of divorce, with his father from that time until his death. He died on December 24, 1932, from injuries received in an accident.

The marriage was dissolved by a decree of the Superior Court of the State of Connecticut for the adultery of the mother on January 28, 1921, and by said decree the care and custody of the child were awarded to the father with the privilege to the mother of seeing the child once a month. Both parties resided in the State of Connecticut when they separated and were residents of said State at the time of the granting of the divorce. The father remarried in May, 1921, and the mother remarried on August 11, 1923.

In relation to the question of abandonment, it is immaterial what caused the separation of the parents in April, 1920, for an agreement as to the custody of their child was signed on August 30, 1920, and even had the mother been at fault and not furnished the care necessary to the child's welfare from the date of separation to the time the agreement was signed, still no abandonment could be predicated from any separation of the mother from her child for a period of less than five months, for a spouse has a reasonable time to ask forgiveness for abandoning the other spouse and again establishing the family relations, and as to what is reasonable depends upon the circumstances of the case. (*Bohmert* v. *Bohmert,* 241 N. Y. 446; *Matter of Bistany,* 239 id. 19.)

The courts have discussed the meaning of the word " abandoned " as used both in relation to an adoption and in relation to section

133 of the Decedent Estate Law (See *Matter of Larson*, 31 Hun, 539; *Matter of Davis*, 142 Misc. 681; *Matter of Hess*, 143 id. 335; *Matter of Schriffrin*, 152 id. 33, and *Matter of Cohen*, 155 id. 202), and from said decisions there would seem to be analogy between the meaning of the word as used in relation to adoptions and in relation to inheritance of moneys recovered in cases of death by negligence, and as stated in *Matter of Davis* (142 Misc. 681, at p. 691), " It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child."

The agreement between the parents as to the custody of the child was superseded by the decree of divorce granted on January 28, 1921, which gave to the father the care and custody of the child and the mother only the privilege of seeing him once a month. The testimony of the mother in that relation was to the effect that she saw the boy at least ten times thereafter before he died, covering a period of nearly twelve years and that she had called the father on the telephone several times in relation to seeing the child and that the child was either going out or it was not convenient for her to see him at that time. The testimony of the father was that the mother only saw the child five times from the time she left the child until he died. Two of such occasions from the testimony of the parental grandmother were evidently before the divorce, and from the testimony of the father, one of the occasions was when the child lay dying. And the testimony of the second wife of the father was to the effect that the mother had never visited the child to her knowledge and that said mother had passed the child on the street, and had ignored him, when he was in the company of the witness.

Assuming, without so finding, that the mother had seen her child on the ten occasions to which she testified, within a period of twelve years, would that be a sufficient compliance with any maternal duties in relation to the care of her child awarded the father by said decree of divorce so as to avoid a finding of abandonment? Or did the decree of divorce legally exonerate the mother from any maternal duties in relation to the care of her child? It would seem that the rights of a guilty party to a divorce as to the care and custody of a child are not entirely abrogated but only curtailed. (See *Matter of Thorne*, 240 N. Y. 444, which held that a mother was not judicially deprived of the custody of the child in the sense that she should not be cited under section 177 of the Surrogate's Court Act in a proceeding for the appointment of a guardian of the child, and *Matter of Metzger*, 114 Misc. 313, a matter of an adoption, where the father had been divorced and

had the right of visitation only, in which Surrogate FOLEY said, " In effect the father's rights were curtailed, not abrogated. * * * The natural rights of the parent to his child are sacred and are jealously guarded by the law. The powers of the state over a child are not superior to the natural rights of the parent." ) If a parent, therefore, retains rights over a child, although divorced, with the right of visitation only, would it not naturally follow that there are certain duties attached to such rights which must be performed by the offending parent? Such duties could not be held in abeyance and would undoubtedly be lost by the failure or neglect of the parent to perform them.

If the parent retains rights, what duties would be charged thereon? That question is answered by the text in *Matter of Davis* (*supra*), viz.: " If a parent withholds his presence, his love, his care, the opportunity to display filial affection and neglects to lend support and maintenance, such a parent relinquishes all parental claim and abandons the child." Leaving out the support and maintenance, which a mother is not required to supply when the father is living, it would appear that the mother did not visit her son upon the occasions when she was permitted to visit him by the decree of divorce and neglected her opportunity to display her filial affection and withheld her presence from him. It is quite evident that the only love and affection that the child ever had was furnished by the father and his second wife.

Although the parents were divorced in Connecticut, both later moved to this State and still are residents thereof, and the mother had the right to apply to the Supreme Court of this State for restoration of some if not all of her rights to her child, and upon showing her subsequent marriage, her good conduct and ability to properly care for him would probably have had such rights restored in part or whole. (*People ex rel. Allen* v. *Allen*, 40 Hun, 611; *People ex rel. Jones* v. *Johnson*, 205 App. Div. 190, and the cases cited therein on p. 193.) But no such application was made. The child was unimportant to the mother but the recovery of the money received for his death induced her to consult with two attorneys and bring a proceeding in relation thereto.

From the evidence adduced herein and the law applicable thereto, the court finds that the said mother abandoned her child, within the meaning of the word " abandoned," as used in subdivision 3 of section 133 of the Decedent Estate Law, and, therefore, is entitled to no part of the amount recovered by the administrator for the death of her child by negligence. Costs to administrator payable by the petitioner.

Enter decree accordingly.